FILED

2023 Mar-15  PM 02:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **CATESSA GRIFFIN and** | ) | |
| **ANTHONY GRIFFIN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **v.** | ) | **5:22-cv-00332-MHH** |
| | ) | |
| **STATE FARM CASUALTY** | ) | |
| **COMPANY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

In their complaint, plaintiffs Catessa and Anthony Griffin allege that defendant State Farm Casualty Company, Inc. breached its insurance contract with them by failing to indemnify and reimburse them after their home was destroyed in a fire. (Doc. 1-1, p. 12). State Farm has asked the Court to enter judgment in its favor on the Griffins' claim because the Griffins did not fulfill their contractual obligation to cooperate with the company's investigation of their insurance claim and because payment was not due when the Griffins filed suit. (Doc. 5). This opinion resolves State Farm's summary judgment motion.

The opinion opens with a statement of the legal standard that applies to State Farm's summary judgment motion. Then, consistent with that standard, the Court summarizes the facts relevant to State Farm's motion in the light most favorable to

the Griffins.  Finally, the Court analyzes the facts under the legal principles that govern State Farm's defenses to coverage.

## I.

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To demonstrate a genuine dispute as to a material fact, the party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

When considering a motion for summary judgment, a district court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences in the non-moving party's favor.  *White v. Beltram Edge Tool Supply, Inc*., 789 F.3d 1188, 1191 (11th Cir. 2015).  Therefore, in this opinion, the Court views the summary judgment evidence in the light most favorable to the Griffins.

## II.

State Farm issued a manufactured home insurance policy for the period from August 29, 2021 to August 29, 2022 to Mr. Griffin.  (Doc. 4-1, p. 2).  A fire destroyed

the Griffins' home on January 4, 2022.  (Doc. 10-2, pp. 1-2, ¶¶ 3, 15).  In a provision of the policy labelled "**Your Duties After Loss**," the policy obligated Mr. Griffin, among other things, to provide State Farm with records and documents upon request, submit to an examination under oath, and produce other members of his household for an examination under oath to the extent he was able.  (Doc. 4-1, pp. 27-28) (bold type in Doc. 4-1).  In a paragraph titled "**Suit Against Us**," the policy states:  "No action shall be brought unless there has been compliance with the policy provisions." (Doc. 4-1, p. 28) (bold type in Doc. 4-1).  Lastly, in the "**Loss Payment**" provision, the policy states that a loss is payable 60 days after State Farm receives "proof of loss" and one of three events occurs:  State Farm and the insured "reach agreement," a court enters a final judgment, or an appraisal award is filed with State Farm.  (Doc. 4-1, p. 29) (bold type in Doc. 4-1).

After receiving Mr. Griffin's claim, State Farm's Richie Stephens mailed a letter dated February 2, 2022 to Mr. Griffin which states:  "There is a question as to whether or not you have intentionally concealed a material fact or circumstance, made false statements or committed fraud to this insurance."  (Doc. 4-3, p. 7).  Ms. Griffin called Erica Young, the Griffins' point of contact at State Farm, to ask how the Griffins "had concealed any facts or made any false statements."  (Doc. 10-4, p. 2, ¶ 7).  Ms. Young replied that she "'did not know.'"  (Doc. 10-4, p. 2, ¶ 7).  Ms.

Young asked Ms. Griffin to provide an estimate of how much it would cost "to repair" the family's home.  (Doc. 10-4, p. 2, ¶ 11).

State Farm representative Mike Martos interviewed Mr. and Ms. Griffin separately about the claim.  During Mr. Griffin's interview, Mr. Martos commented, "We think something is up," and asked several questions that Mr. Griffin found offensive, such as why Mr. Griffin did not know certain information about the day-to-day affairs of the household (which Ms. Griffin handled) and why the Griffins were paying their oldest daughter's insurance and telephone bills.  (Doc. 10-2, p. 2, ¶¶ 6, 8-12).[1]

State Farm sent letters dated February 8, 2022, to Mr. Griffin and to Ms. Griffin to ask them to appear for examinations under oath on February 23, 2022.  State Farm also asked the Griffins to produce documents by February 18 for State Farm's review.  (Doc. 4-3, pp. 11-24).  Mr. Griffin responded through his attorney, Thomas Drake II, who sent a letter to State Farm on February 16, 2022 demanding payment of the policy limit within ten days.  (Doc. 4-3, p. 26).  By letter, State Farm's attorney, David Fawal, replied the same day.  Mr. Fawal explained that State Farm was investigating the loss and was trying to schedule examinations under oath.  Mr. Fawal sent Mr. Drake copies of the February 8 letters that State Farm sent to Mr.

---

[1] Mr. Griffin is not certain of the date of the interviews with Mr. Martos.  (Doc. 10-2, p. 2, ¶ 6). The Court infers that the interviews occurred sometime after the Griffins received the February 2, 2022 letter from State Farm but before State Farm requested examinations under oath.

and Ms. Griffin.  (Doc. 4-3, pp. 28-43).  On February 17, 2022, the Griffins sued State Farm in the Circuit Court of Cullman County.  (Doc. 4-2, pp. 2-3).  The Griffins did not appear for the scheduled examinations under oath and did not produce the documents that State Farm requested.  (Doc. 4-3, p. 5, ¶ 10; Doc. 4-4, p. 2, tpp. 3-4; Doc. 4-5, p. 2, tpp. 3-4).

## III.

Under Alabama law, a "contract of insurance, like other contracts, is governed by the general rules of contracts." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691 (Ala. 2001).[2]  To avoid summary judgment on their breach of contract claim against State Farm, the Griffins must be able to demonstrate that Mr. Griffin performed his obligations under his insurance policy, and State Farm did not.

---

[2] In a diversity case like this one, a federal court must "'apply the laws, including principles of conflict of laws, of the state in which the federal court sits.' *Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004) (citation omitted). 'In a contractual dispute, Alabama law ... first look[s] to the contract to determine whether the parties have specified a particular sovereign's law to govern.' *Stovall v. Universal Const. Co.*, 893 So. 2d 1090, 1102 (Ala. 2004). Absent 'such a contractual specification,' the court follows 'the principle of *lex loci contractus*, applying the law of the state where the contract was formed.' *Id.* 'That state's law then governs unless it is contrary to the forum state's fundamental public policy.'" *Morse v. Life Ins. Co. of North Am.*, 399 F. Supp. 3d 1236, 1241 (N.D. Ala. 2019).  Mr. Griffin's insurance policy does not contain a choice of law provision.  In a provision titled "**Conformity to State Law**," the policy provides:  "When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply."  (Doc. 4-1, p. 36) (bold type in Doc. 4-1).  It appears that State Farm issued Mr. Griffin's policy in Alabama, so the Court applies Alabama law in this opinion.

*State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999) (quoting *Southern Medical Health Systems, Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995)).

With respect to Mr. Griffin's obligations, when making a claim, "an insured must comply with his or her post-loss obligations" and must "meet[] those obligations [as] a precondition to any duty on the part of the insurer to make a loss payment." *Baldwin Mut. Ins. Co. v. Adair*, 181 So. 3d 1033, 1045 (Ala. 2014) (citing *Nationwide Ins. Co. v. Nilsen*, 745 So. 2d 264 (Ala. 1998), and *Akpan v. Farmers Ins. Exch., Inc.*, 961 So. 2d 865, 872 (Ala. Civ. App. 2007)); *Nilsen*, 745 So. 2d at 267 ("An insurance company is entitled to require an insured to submit to an examination under oath as part of its claims investigation process. Moreover, an insurer's obligation to pay or to evaluate the validity of an insured's claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims.") (citation omitted). When an insurance contract requires an insured to submit to an examination under oath, and the insured sues for breach of contract without complying with the insurer's request for an EUO, the insurer is entitled to summary judgment on the breach of contract claim. *Nilsen*, 745 So. 2d at 268-69.

Here, it is undisputed that, in letters dated February 8, 2022, State Farm asked Mr. Griffin and Ms. Griffin to participate in examinations under oath on February 23, 2022; the Griffins sued State Farm in the Circuit Court of Cullman County,

Alabama on February 17, 2022; and the Griffins did not appear for their examinations under oath before they filed this lawsuit.  Mr. Griffin's failures to sit for an examination under oath and to arrange for his wife to sit for an examination under oath before the Griffins sued State Farm constitutes a failure on Mr. Griffin's part to comply with post-loss obligations under his insurance policy.  *Nilsen*, 745 So. 2d at 269 ("Because it is undisputed that Nationwide requested that Nilsen submit to an examination under oath and that Nilsen failed to do so before filing this action, we must conclude that Nilsen failed to comply with a condition precedent to recovery under the contract.").  Therefore, the Court must render judgment for State Farm on the Griffins' breach of contract claim.  *Nilsen*, 745 So. 2d at 269.

The Griffins argue that State Farm "breached the parties['] contract first" when it "failed to pay the Plaintiff's reasonable living expenses ($187.00 for food) (Doc. 4-1, p. 19); sought an estimate to 'repair' a TRAILER that had been destroyed; interrogated and denigrated" Mr. Griffin; and failed to pay the claim knowing that the Griffins "did not have the means to provide for themselves and their family" after the fire "without substantial assistance."  (Doc. 10, p. 3).  These arguments do not enable the Griffins to avoid summary judgment on their breach of contract claim.

Again, State Farm was not obligated to pay the fire loss claim until the Griffins complied with their post-loss obligations, and the Griffins did not sit for examinations under oath or provide documents that State Farm requested before the

Griffins sued State Farm.  Understandably, in the wake of the fire, the Griffins needed supplemental income to meet their family's financial needs, but State Farm potentially would become obligated to provide policy proceeds to pay living expenses only after the Griffins supplied information that State Farm reasonably requested to allow the company to investigate the claim.[3]  Under Alabama law, an insurer does not have to investigate or pay a claim until an insured satisfies all conditions precedent. *United Ins. Co. of America v. Cope*, 630 So. 2d 407, 411 (Ala. 1993) (insurer's "obligation to pay or to evaluate the validity of the claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims.").  The Alabama Supreme Court has held that contract provisions requiring an insurer to cover living expenses "must be read in conjunction with those provisions establishing the insured's obligations in the event of a loss." *Nilsen*, 745 So. 2d at 268.

Like the Griffins, the plaintiff in *Nilsen* argued that he was excused from failing to appear for an examination under oath because the insurer refused to pay

---

[3] In their affidavits, Mr. and Mrs. Griffin state that State Farm paid them $187.00 as a food allowance and $1,500 that the Griffins do not relate to a specific expense.  (Doc. 10-2, p. 2, ¶ 14; Doc. 10-4, p. 2, ¶ 9).  The Griffins have not indicated how much money they requested from State Farm, when they made the request, or whether they provided receipts for living expenses as Mr. Griffin's policy required.  (Doc. 4-1, p. 28).  The Griffins state generally that they "fully complied" with State Farm's requests up to the time they sought an attorney.  (Doc. 10-2, p. 3, ¶ 17; Doc. 10-4, p. 2, ¶ 8).  State Farm acknowledges that the Griffins "submitted a Sworn Statement in Proof of Loss and inventory forms identifying personal property allegedly damaged or destroyed in the fire."  (Doc. 5, p. 2).  It is unclear whether that proof of loss included a request for living expenses or receipts in support of such funds.

living expenses after the insurer obtained information that caused it to pursue a more rigorous investigation of the fire loss claim. The Alabama Supreme Court found that argument "without merit," holding that the insurer had no duty to pay because the insured had not complied with the policy provision that required the insured to submit receipts to support the claimed living expenses. 745 So. 2d at 267-68. Here, because the Griffins did not respond to State Farm's request for information regarding the claim, State Farm was not obligated to pay the Griffins' living expenses.

The Griffins' arguments concerning living expenses, Ms. Young's request for a repair estimate for the trailer, and Mr. Martos's purportedly offensive questions during his interview of Mr. Griffin are rooted in the duty of good faith and fair dealing. (Doc. 10, pp. 2-3). Under Alabama law, a plaintiff's claim concerning an insurer's alleged breach of the duty of good faith and fair dealing arises in tort as a bad faith failure to investigate or pay claim. *Chavers v. Nat'l Sec. Fire & Cas. Co.*, 405 So. 2d 1 (Ala. 1981). The Griffins did not assert a bad faith claim in their complaint. If they had, the claim would fail as a matter of law because, to sustain a bad faith refusal to pay claim under Alabama law, an insured must demonstrate that his insurer breached the insurance contract between the parties. *Nat'l Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982). As discussed, the Griffins have

not produced sufficient evidence to support a claim for breach of Mr. Griffin's insurance policy.

**IV.**

For the reasons discussed in this opinion, by sperate order, the Court will grant State Farm's motion and enter judgment for State Farm on the Griffin's breach of contract claim.

**DONE** and **ORDERED** this March 15, 2023.

_Madeline H. Haikala_

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE